# EXHIBIT C

DATE FILED: May 4, 2022 6:06 PM
FILING ID: 5772D53E2A601
CASE NUMBER: 2022CV30798

| | |
|---|---|
| **DISTRICT COURT, ARAPAHOE COUNTY**<br>**STATE OF COLORADO**<br>Address: 7325 S. Potomac Street<br>Centennial, CO 8080112 | |
| **Plaintiff: PAIN PHYSICIANS OF DENVER, LLC, a Colorado limited liability company; Donald Bernardini, MD; Giancarlo Checa, MD; and Christopher Huser, MD;**<br><br>**v.**<br><br>**Defendant: SUMMIT VIEW SURGERY CENTER, LLC, a Colorado limited liability corporation.** | ▲ Court Use Only ▲ |
| Jason C. Astle, #38540<br>SPRINGER AND STEINBERG, P.C.<br>1600 Broadway Suite 1200<br>Denver, Colorado 80202<br>Telephone: (303) 861-2800<br>Facsimile: (303) 832-7116<br>E-mail: jastle@springersteinberg.com<br>***Attorneys for Plaintiff*** | Case Number:<br><br>Division: |
| **COMPLAINT** | |

COMES NOW Plaintiff, Pain Physicians of Denver, LLC, Donald Bernardini, MD, Giancarlo Checa, MD, Christopher Huser, MD, and Kevin Smith, MD, by and through its counsel of record, the law firm of Springer & Steinberg, P.C., and brings this Complaint for Declaratory Relief against Defendant Summit View Surgery Center, LLC.

**PARTIES**

1. Plaintiff Pain Physicians of Denver, LLC is a Colorado limited liability company in good standing. The members of Pain Physicians are Donald Bernardini, MD, Giancarlo Checa, MD, Christopher Huser, MD, and Kevin Smith, MD (collectively "Pain Physicians").

2. Plaintiff Donald Bernardini, MD, is a resident of the State of Colorado.

3. Plaintiff Giancarlo Checa, MD, is a resident of the State of Colorado.

4. Plaintiff Christopher Huser, MD, is a resident of the State of Colorado.

5. Plaintiff Pain Physicians has its primary business address at 10700 E. Geddes Ave, Suite 100, Englewood Colorado 80112

6. Defendant Summit View Surgery Center, LLC ("Summit View") is a Colorado limited liability company in good standing.

7. Summit View has its primary business address at 7730 South Broadway, Littleton, Colorado 80112, located in Arapahoe County.

8. Summit View's registered agent as listed with the Colorado Secretary of State is CT Corporation System, 7700 E. Arapahoe Road, Suite 220, Centennial, CO 80112-1268.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to C.R.S. § 13-1-124(1) and directly under the Constitution of the State of Colorado.

10. Venue is proper in this Court because Defendant is located in Arapahoe County, Colorado.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Summit View

11. Summit View is a manager-managed Limited Liability Company.

12. Summit View owns and operates an accredited medical facility that operates as an ambulatory surgical center (the "Facility") which performs a broad range of outpatient surgical procedures.

13. Summit View is an affiliate of United Surgical Partners International.

14. Summit View partners with local physicians to provide services to physicians' patients.

15. Through licensed physicians and professional staff, the Facility provides various services, including: Pain Management, General Surgery, Podiatry, Otolaryngology, Orthopedics, Gynecology, and Plastic Surgery.

16. Summit View is majority-owned by PAHS/USP Surgery Centers, L.L.C., a Colorado limited liability company ("PAHS/USP"). PAHS/USP is owned 51% by PorterCare Adventist Health System, a Colorado nonprofit corporation ("PAHS"), and 49% by USP Denver, Inc., a Colorado corporation ("USP").

17. Summit View is minority-owned by physicians or their limited liability companies.

18. Summit View and its members are governed by an operating agreement.

19. The current operative operating agreement is the Third Amendment To Amended and Restated Operating Agreement of Summit View Surgery Center, LLC ("Operating Agreement").

20. Summit View is managed by a Board of Managers.

21. The physicians who are members of Summit View or members of entity members of Summit View ("Member-Physicians") agree to perform at least 30% of their procedures at the Facility.

22. Summit View then bills patients (or their insurance companies) for the use of the Facility.

23. Most of Summit View's revenues are attributable from the member-physicians use of the Facility.

24. The Member-Physicians also maintain their own separate practices.

**B. Pain Physicians' purchase of interests in Summit View**

25. In October of 2017, Pain Physicians' physician-members were approached by Aric Burke to invest in Summit View.

26. Upon information and belief, in October of 2017 Mr. Burke was an executive and agent of Summit View and was authorized to make representations on behalf of Summit View.

27. On October 17, 2017, Mr. Burke made certain representations about the projected distributions that Summit View would make to its members.

28. Mr. Burke represented that the projected distributions were based in part on existing revenues.

29. Mr. Burke represented that Pain Physicians would receive over $7 million in distributions over 5 years if Pain Physicians purchased 210 membership units.

30. Mr. Burke did not qualify those projections and representations as being only estimates or projections and did not warn Pain Physicians or its members that they could not rely on those projections in making an investment.

31. Mr. Burke did not provide any assumptions on which the projections were based that otherwise would cause Pain Physicians and its physician members not to rely on the representations or qualify any such reliance.

32. Mr. Burke did not make any statement that is customarily made in securities offerings in order to limit, qualify, or prevent reliance on such projections.

33. Subsequently, Donna Kaye, who also represented Summit View, continued to make the same representations that were made by Mr. Burke.

34. Ms. Kaye never qualified the projections and representations as being only estimates or projections and did not warn Pain Physicians or its members that they could not rely on those projections in making an investment.

35. Ms. Kaye did not provide any assumptions on which the projections were based that otherwise would cause Pain Physicians and its physician members not to rely on the representations or qualify any such reliance

36. Ms. Kaye did not make any statement that is customarily made in securities offerings in order to limit, qualify, or prevent reliance on such projections.

37. In reliance on Mr. Burke's and Ms. Kaye's representations, Pain Physicians agreed to invest in Summit View.

38. Based on Mr. Burke's representations, Pain Physicians cancelled its ownership interests in other ambulatory surgery centers.

39. Pain Physicians cancelled its member interests to meet the expected volume of procedures required of Summit View members and to obtain the projected results.

40. Pain Physicians ultimately purchased membership units amounting to what Summit View represents as a 30.296419% interest in Summit View.

41. Pain Physicians became the largest minority member of Summit View.

42. From 2018 until 2020, approximately 85% of Summit View's revenues came from Pain Physicians' member-physicians' use of Summit View's Facility.

43. Summit View's revenue from Pain Physicians' use of Summit View's Facility significantly exceeded the size of Pain Physicians membership interest in Summit View, Pain Physician's investment in Summit View, and Pain Physician's proportionate share of distributions from Summit View.

44. From 2018 until 2020, Pain Physicians' member physicians also exceeded their expected volume of procedures.

45. Despite the high percentage share of revenues generated by Pain Physicians, Summit View never came close to meeting the distribution projections that were given to Pain Physicians and on which Pain Physicians and its members relied in purchasing membership interests in Summit View.

46. For example, the "Year 1" (2018) projected distributions were $1,290,836. The actual distributions were approximately $279,502.09.

47. The five-year projection was over $7 million. The three-year cumulative projected amount of distributions was to be over $4 million. After three years, the cumulative amount of actual distributions to Pain Physicians was less than $1.2 million.

48. To make matters worse, and part of the reason why distributions were so low, PAHS/USP mismanaged Summit View.

49. For example, PAHS/USP's mismanagement included allowing accounts that could have been collected to lapse making them uncollectable.

50. The lost revenue from uncollected accounts amounted to hundreds of thousands of dollars but was still not enough to meet the projections on which Plaintiffs relied in investing in Summit View.

51. Due to the mismanagement, the misrepresentations regarding distributions, and other reasons, Pain Physicians resigned as a member on April 13, 2020.

52. Pain Physicians tendered its membership units to Summit View on April 13, 2020, as part of its resignation.

53. Summit View refuses to redeem Pain Physicians' membership units.

**FIRST CLAIM FOR RELIEF**
**Declaratory Relief pursuant to Colo. Rev. Stat. § 13-51-101 to 115 & Colo. R. Civ. P. 57**
**(All Plaintiffs)**

54. Pain Physicians hereby incorporates by reference all of the allegations in this Complaint as if set forth in full herein.

55. The Operating Agreement contains a noncompete provision.

56. The noncompete reads in part as follows:

> Section 15.12. Physician Member Non-competition Covenant.
>
> (a) Each Physician Member agrees that, so long as such Physician Member owns any Membership Units and for a one year period following such Physician Member's disposition of all of his or her Membership Units, such Physician Member will not, directly or indirectly, engage anywhere within ten miles of the Surgery Center (the "Noncompete Area") in the development, management or ownership of ambulatory surgery centers or surgical hospitals, in

> providing administrative or consulting services to any ambulatory surgery center or surgical hospital, or in any other business that would be competitive with the business conducted by the Company or the Surgery Center . . . .

57. The Operating Agreement also provides that the ability to sell Membership Units is at the sole discretion of the Board of Managers as follows (in part):

> Section 15.2. Right of First Refusal. A Member may not, without the prior consent of the Board of Managers (which consent may be withheld at the Board of Managers' sole discretion), sell, assign or transfer the whole or any part of his or her Membership Units to any person or entity. . . .

58. The Board of Managers can deny, at its sole discretion, the sale or transfer of a Membership Interest, and thereby holding the member hostage to the noncompete provision.

59. A member has no ability to force the Board of Managers to allow it to sell or transfer its membership interest.

60. By unilaterally controlling when a member interest can be divested, the Board of Managers controls how long a member is subject to the noncomplete provisions.

61. The Board of Managers can make a member subject to the noncompete agreement in perpetuity by refusing to permit the member from selling or transferring its membership interest.

62. Noncompete agreements must be limited in time to be enforceable under Colorado law.

63. The noncompete provision here is unenforceable because it has no time limit as a result of the power of the Board of Managers to prevent the sale or transfer of membership interests.

64. In addition, the noncompete provision is also unenforceable because Pain Physicians and its members were fraudulently induced into executing the agreement.

65. Pain Physicians tendered its interests to Summit View in a resignation letter dated April 13, 2020.

66. Summit View refused and continues to refuse to redeem Pain Physicians' interests.

67. In a letter dated September 30, 2021, Summit View put Pain Physicians on notice that it will pursue all remedies to enforce the noncompete agreement. That position was reiterated in an email from counsel dated March 11, 2022.

68. Those communications triggered a provision in the Operating Agreement by which Pain Physicians was deemed to have offered to sell its membership interests to Summit View and its members. Neither Summit View nor any member accepted that offer.

69. Based on the communications from Summit View, Summit View seeks to enforce the noncompete agreement and claims that absent their approval of any sale or transfer, Pain Physicians is subject to the noncompete provision.

70. Summit View is holding Pain Physicians' interest in Summit View hostage by refusing to redeem its interests.

71. Summit View is impermissibly attempting to interfere with Pain Physician's economic prospects.

72. A controversy exists between Summit View and Pain Physicians with respect to the enforceability of the noncompete agreement.

73. A determination by the court is necessary to interpret the agreement and decide if the noncompete provision is enforceable.

74. A determination by the court will terminate the controversy with respect to the enforceability of the noncompete provision.

**WHEREFORE**, Pain Physicians respectfully requests that the court enter an order declaring that the Operating Agreement's noncompete provision is void and unenforceable, together with such other and further relief as may be granted in law or equity.

**SECOND CLAIM FOR RELIEF**
**Securities Fraud (Colorado -- § 11-51-501 et. seq C.R.S.)**
**(Pain Physicians)**

75. Pain Physicians hereby incorporates by reference all of the allegations in this Complaint as if set forth in full herein.

76. Pain Physicians purchased securities from member physicians and/or Summit View on or about January 1, 2018. Pain Physicians subsequently purchased additional security interests from two departing doctors.

77. The documents associated with the sale of the securities all treat the membership interests as if they were securities.

78. The securities purchased are investment contracts and, therefore, are "securities."

79. According to documents provided by Summit View, Pain Physicians holds a 30.296419% membership interest.

80. Summit View, through its agent Mr. Burke, acted recklessly, knowingly, or with an intent to defraud Pain Physicians.

81. Summit View's intentional, knowing, and reckless acts include creating misleading spreadsheets containing unreasonably and baselessly high claims for distributions and holding meetings, using such spreadsheets to convince Pain Physicians and its members to invest.

82. Summit View's conduct was in connection with the purchase or sale of a security.

83. Summit View's conduct was in violation of C.R.S. section 11-51-501(1).

84. Pain Physicians relied upon Summit View's conduct to its detriment.

85. Summit View's conduct caused Pain Physicians damages.

**WHEREFORE**, Pain Physicians respectfully requests that the court issue an order awarding damages, pre- and post- judgment interest, attorneys' fees and costs, together with such other and further relief as may be granted in law or equity.

## THIRD CLAIM FOR RELIEF
## Securities Fraud (Federal – Section 10(b) of the Securities and Exchange Act of 1934)
## (Pain Physicians)

86. Pain Physicians hereby incorporates by reference all of the allegations in this Complaint as if set forth in full herein.

87. Summit View, through its representatives, made untrue or misleading statements and omitted material facts.

88. Summit View made untrue statements of a material fact with respect to the projected distributions, which were unreasonably and baselessly high.

89. Summit View made such statements with the intent of luring Pain Physicians and its members to invest and bring their substantial business to Summit View.

90. Summit View omitted material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading. In particular, Summit View omitted the basis for the projections. Summit View also failed to inform Pain Physicians and its members that they could not rely on the projections in making a decision to invest.

91. Summit View's statements and omissions were made in connection with the purchase or sale of a security.

92. Summit View acted to deceive, manipulate and defraud and did so intentionally or recklessly.

93. Summit View's intentional and reckless acts include creating misleading spreadsheets containing unreasonably and baselessly high claims for distributions and holding meetings, using such spreadsheets to convince Pain Physicians and its members to invest.

94. Pain Physicians and its members relied on the false and misleading statements.

95. Pain Physicians and its members suffered economic losses as a result of this reliance.

**WHEREFORE**, Pain Physicians respectfully requests that the court issue an order awarding damages, pre- and post- judgment interest, attorneys' fees and costs, together with such other and further relief as may be granted in law or equity.

**FOURTH CLAIM FOR RELIEF**
**Permanent Injunction (Alternative)**
**(Pain Physicians)**

96. Pain Physicians hereby incorporates by reference all of the allegations in this Complaint as if set forth in full herein.

97. A resolution of all claims will not be possible until Summit View redeems Pain Physicians' interests and membership units.

98. Summit View should be enjoined and required to redeem Pain Physicians' membership units.

99. Irreparable harm will result unless an injunction requiring Summit View to redeem Pain Physicians' membership units is issued.

100. Specifically, should the noncompete not be declared void or unenforceable, the only relief available would be for Summit View to redeem the membership units.

101. Summit View has refused to do so and would hold Pain Physicians hostage by disallowing any transfer or sale.

102. Forcing Pain Physicians to hold membership units it does not want, and thereby subjecting it to a noncompete agreement that has no limits in time would cause irreparable harm.

103. Such harm includes the loss of opportunities and income that would be generated by another business.

104. The threatened injury outweighs the harm that the injunction may cause to Summit View because, among other things, Summit View was not managed successfully and could not compete in any event and, therefore, would not lose any revenue.

105. The injunction, if issued, will not adversely affect the public interest. The public would benefit from having greater choices in the marketplace.

**WHEREFORE**, Pain Physicians respectfully requests that the court issue an injunction requiring Summit View to redeem Pain Physicians' membership units together with such other and further relief as may be granted in law or equity.

**FIFTH CLAIM FOR RELIEF**
**Breach of Contract – Specific Performance (Good Faith and Fair Dealing)**
**(Pain Physicians)**

106. Pain Physicians hereby incorporates by reference all of the allegations in this Complaint as if set forth in full herein.

107. The Operating Agreement contains an implied covenant of good faith and fair dealing.

108. Summit View has discretion to redeem Pain Physicians' membership interests.

109. Summit View has refused to exercise its discretion in purchasing Pain Physicians' membership interests, despite Pain Physicians having resigned as members.

110. Summit View's refusal to purchase Pain Physicians' interests is a breach of the covenant of good faith and fair dealing.

111. Pain Physicians is entitled to specific performance of Summit View's obligation to purchase Pain Physicians' interests in accordance with the procedures set forth in the Operating Agreement.

**WHEREFORE**, Pain Physicians respectfully requests that the court issue an order requiring Summit View to purchase Pain Physicians' membership interests.

**DATED** this 4th day of May, 2022

Respectfully submitted,

SPRINGER AND STEINBERG, P.C.

BY: *_/s/ Jason C. Astle_*
Jason C. Astle, #38540
*Counsel for Plaintiffs*

Plaintiffs' Addresses:

Pain Physicians of Denver, LLC
10700 E. Geddes Ave, Suite 100,
Englewood Colorado 80112

Donald Bernardini, MD
9850 Eliza Ct.
Highlands Ranch, CO 80126

Giancarlo Checa, MD
7854 E. 25th Drive
Denver CO 80238

Christopher Huser, MD
6288 Ellingwood Point Way
Castle Rock, CO 80108